UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re: JIM M. ALDERMAN and
DON ALDERMAN,

      Debtors.

No. 19-12626-j7

IVAN P. SERGEJEV,

      Plaintiff,

v.

JIM M. ALDERMAN and
DON M. ALDERMAN,

      Defendants

Adversary No. 20-1003-j

## MEMORANDUM OPINION AND ORDER

The matter is before the Court on Plaintiff's Motion for Summary Judgment, filed August 17, 2020. Doc. 8. Plaintiff requests the Court to grant summary judgment on his non-dischargeability claims under 11 U.S.C. §§ 523(a)(2)(A) and (a)(6)[1] based in part on a state court judgment Plaintiff obtained against the Defendants after Defendants failed to appear at trial. Defendant Jim Alderman opposes the motion,[2] asserting that the judgment cannot be given preclusive effect because it was entered by default.[3] The Court has determined that the state court judgment has preclusive effect because it was entered after fifteen months of active litigation,

---

[1] All future statutory references are to Title 11 of the United States Code, unless otherwise noted.
[2] Defendant Jim Alderman represents that Don Alderman is now dead. *See* Answer to Complaint to Recover Money Damages and for Determination Excepting Debt from Discharge and Counter-Claim – Doc. 4.
[3] Defendants also assert that because Plaintiff did not properly authenticate the documents from the state court action offered in support of the motion for summary judgment, the Court cannot consider them. *See* Debtor/Defendant's Response to Motion for Summary Judgment – Docket No. 9. With the Court's permission, Plaintiff has since supplemented the motion for summary judgment with certified copies of the docket and documents filed in the state court action. *See* Order Granting Plaintiff's Motion to Supplement the Record (Doc. 12) and Doc. 11.

Plaintiff presented sufficient evidence to the state court at trial to carry his burden of proof, and Defendants offered no reason, justification, or excuse for their decision not to appear at trial. Findings made by the state court judgment together with evidence proffered in support of the Motion for Summary Judgment are sufficient to establish that Plaintiff is entitled summary judgment on his non-dischargeability claim under § 523(a)(6) as to liability and certain of his claimed damages.

## SUMMARY JUDGMENT STANDARDS

The Court will grant summary judgment when the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a), made applicable to adversary proceedings by Rule 7056, Fed.R.Bankr.P. "[A] party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and . . .[must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A motion for summary judgment must be supported by admissible evidence. *See* Fed.R.Civ.P. 56(c). Certified copies of documents filed of record in a court proceeding are admissible evidence and may be relied upon in support of summary judgment. Fed.R.Evid. 902(4) (certified copies of public records are self-authenticating); *Gentry v. Szymczyk (In re Szymczyk),* No. 18-11703-j7, 2019 WL 451227, at *2 (Bankr. D.N.M. Feb. 4, 2019). When considering a motion for summary judgment the Court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Wolf v. Prudential Ins. Co. of America*, 50 F.3d 793, 796 (10th Cir. 1995) (quoting *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990)).

-2-

Case 20-01003-j    Doc 13    Filed 03/08/21    Entered 03/08/21 09:35:12 Page 2 of 19

FACTS NOT SUBJECT TO MATERIAL DISPUTE

Plaintiff has demonstrated that there is no genuine issue with respect to the following facts, which are established for purposes of the Motion for Summary Judgment.

1. On August 31, 2016, Plaintiff filed a lawsuit against Defendants in the Eleventh Judicial District Court, San Juan County, New Mexico (the "State Court") as Case No. D-1116-CV-2015-01115 (the "State Court Action"). Complaint to Recover Money Damages and for Determination Excepting Debt from Discharge ("Complaint"), ¶ 7; Answer to Complaint to Recover Money Damages and for Determination Excepting Debt from Discharge and Counterclaim ("Answer"), 1; Certified copy of Docket from State Court Action.

2. Plaintiff asserted claims against Defendants in the State Court Action based on an alleged breach of a residential lease agreement. Complaint, ¶¶ 7 and 8; Answer, ¶ 1.

3. Defendants answered the amended complaint filed in the State Court Action. Complaint, ¶ 9; Answer, ¶ 1.

4. Defendants filed a counterclaim in the State Court Action. Complaint, ¶ 9; Answer, ¶ 1.

5. The State Court allowed Defendants' attorney to withdraw from the State Court Action on March 15, 2017. Complaint, ¶ 10; Answer, ¶ 1.

6. The State Court allowed Defendant's second attorney in the State Court Action to withdraw from representing the Defendants in the State Court Action on February 13, 2018. Complaint, ¶ 11; Answer, ¶ 1.

7. The State Court held a trial in the State Court Action on April 19, 2018. Complaint, ¶ 13; Answer, ¶ 5 (admitting that a trial was held).

8.  Defendants did not appear at the trial in the State Court Action. Complaint, ¶ 15; Answer, ¶ 6.

9.  Defendants had proper advance notice of the trial in the State Court Action. Certified copy of Transcript from Hearing ("Transcript"), 8:44:43 a.m.

10. The State Court conducted a trial on the merits lasting over two and half hours, at which the Defendants did not appear, took evidence on both liability and damages in the form of live testimony and exhibits, and made detailed findings of fact on the record that included:

    (a) Defendants did not act in a manner that is consistent with good faith and acted in bad faith in misleading the Plaintiff in believing they were going to purchase the home and then engaging in various behaviors that I find inexplicable. Transcript, 11:10:39 a.m.

    (b) [Defendants' actions] seem[ ] intentional want[on] and destruction to the home. Transcript, 11:11:21 a.m.

    (c) The Defendants did extensive property damage to this home and had to be done intentionally and had to take extreme amount of effort and nobody accidentally knocks rocks out of a cement wall without trying and done numerous times. Transcript, 11:11:38 a.m.

    (d) [Defendants] lied and had pets and did extensive damages and cleaning attempts were unsuccessful[.] The damage the pets did could not have occurred at a one-time incident or without somebody noticing. Transcript, 11:12:26 a.m.

    (e) I don't know how you can get feces and urine all over a house like this. Transcript, 11:13:19 a.m.

    (f) If there was another count in this that would allow me to assess exemplar damages I would've been happy to do it because I think a case like this warrants it[.] This was intentional. Transcript, 11:17:54 a.m.

    (g) I haven't seen anything like this before and seems to be a goal of theirs to be destructive. Transcript, 11:19:26 a.m.

    (h) This was done on purpose as far as I can see; Transcript, 11:22:01 a.m., completely intentional; Transcript, 11:22:14 a.m. This is one of those cases of intentional act. Transcript, 11:22:22 a.m.

10. The State Court entered a Judgment for Damages against Defendants in the State Court Action on July 11, 2018. Complaint, ¶ 16; Answer, ¶ 7 (admitting that a judgment was entered in the State Court Action by default).

11. The Judgment for Damages includes the following additional findings of fact:

   (a) Defendants acted in inexplicable ways damaging Plaintiff's property.

   (b) Defendants did extensive damage to Plaintiff's property.

   (c) [T]he amount of damage shown in the evidence showed extreme, almost targeted, damage to the property as alleged in Plaintiff's First Amended Complaint.

   (d) [T]here was damage from Defendants' pets.

   (e) [T]he damage from the pets consisted of pet feces and urine that was in effectively every room of the house.

   (f) Defendants damaged the house by painting it in inexplicable colors without contractual basis or permission from Plaintiff.

   (h) [T]he photographic evidence was clear.

   (i) [T]he witness testimony was credible and convincing.

   (j) [S]ubstantial repairs were necessary to make the premises safe to be leased again and Plaintiff incurred $12,924.83 in repair expenses for parts, supplies, labor, etc.

   (k) Defendant [sic] incurred $490.99 in costs prosecuting this action.

   (l) Defendant [sic] had to travel from Washington State to repair the premises and handle Defendant's breaches and incurred $1,150.00 in necessary travel expenses.

   (m) Plaintiff was damaged through lost rental value under the Contract in the amount of $9,900.00 after offsets, from re-letting after repairs, are applied.

Certified copy of Judgment for Damages, ¶¶ 7, 8, 9, 10, 11, 12, 13, 14, 15, 18, 19, and 25.

12. The Judgment for Damages included the following conclusions of law:

(a) Defendants' actions constituted intentional and wanton destruction of Plaintiff's property.

(b) Defendants breached the Contract through substantial and intentional damaging acts/omissions and failures to pay.

Certified copy of Judgment for Damages, conclusions of law ¶¶ 24 and 27.

13. The Judgment for Damages awarded the following damages against Defendants and in favor of Plaintiff:

(a) $9,900 for lost rent, and
(b) $12,924.83 for property damages, and
(c) $1,150.00 for travel costs, and
(d) $490.[99][4] for legal costs, and
(e) $2,500 for statutory damages, and
(f) Attorney's fees in an amount to [be] submitted by affidavit.

Certified copy of Judgment for Damages, decretal ¶¶ 1 through 6.

14. The State Court entered a Judgment for Attorney Fees against Defendants in the State Court Action on December 20, 2018. Complaint, ¶ 18; Answer, ¶ 8 (admitting that a judgment for attorney fees was entered against Defendants by default).[5]

15. Defendants filed a voluntary petition under chapter 7 of the Bankruptcy Code on November 18, 2019. Complaint, ¶ 4; Answer, ¶ 1,

## DISCUSSION

Plaintiff requests summary judgment in this non-dischargeability proceeding under the doctrine of issue preclusion based on the Judgment for Damages entered in the State Court Action. The Court will address whether the Judgment for Damage is entitled to issue preclusive

---

[4] The Judgment for Damages includes a finding that the costs were $490.99. *See* Judgment for Damages, ¶ 18. The decretal paragraph of the Judgment for Damages lists the costs at $490.00, yet the total amount of the damages awarded in the decretal paragraph is $26,965.82, which includes the additional .99 in costs.

[5] A certified copy of the Judgment for Attorneys Fees was not included in the supplemental exhibits. *See* Doc. 11.

-6-

Case 20-01003-j    Doc 13    Filed 03/08/21    Entered 03/08/21 09:35:12 Page 6 of 19

effect, and, if the Judgment for Damages has preclusive effect, whether the Judgment for Damage establishes Defendants' debt to Plaintiff is non-dischargeable and, if so, in what amount.

### A. The Judgment for Damages has Issue Preclusion Effect

Issue preclusion,[6] also known as collateral estoppel, prevents a party from litigating in a subsequent action the same factual issues decided by a final judgment entered in an earlier action. *Hill v. Putvin (In re Putvin)*, 332 B.R. 619, 624 (10th Cir. BAP 2005) ("Collateral estoppel or issue preclusion is a doctrine that prohibits the relitigation between the same parties of issues of ultimate fact that have been 'determined by a valid and final judgment.'") (quoting *Phelps v. Hamilton*, 122 F.3d 1309, 1318 (10th Cir. 1997)); *Silva v. State*, 1987-NMSC-107, ¶ 6, 106 N.M. 472, 474, 745 P.2d 380, 382 ("Collateral estoppel [also known as issue preclusion] bars relitigation of ultimate facts or issues actually and necessarily decided in a prior suit.").

In bankruptcy cases, a creditor may rely on the issue preclusive effect of a prior judgment to establish the factual basis for a non-dischargeability claim. *See Grogan v. Garner*, 498 U.S. 279, 284 (1991); *Martin v. Hauck (In re Hauck)*, 466 B.R. 151, 163 (Bankr. D. Colo. 2012) ("Issue preclusion may preclude relitigation of the factual bases for a non-dischargeability claim if elements of the claim for non-dischargeability are identical to elements actually litigated and determined in the prior action."), *aff'd,* 489 B.R. 208 (D. Colo. 2013), *aff'd,* 541 F. App'x 898 (10th Cir. 2013).[7]

---

[6] Issue preclusion is often referred to in the case law as collateral estoppel. The preferred term used in more recent case law is issue preclusion. *United States v. Arterbury*, 961 F.3d 1095, 1096 n. 1 (acknowledging that "the more modern term is 'issue preclusion' . . . ").

[7] *See also Welch v. Giron (In re Giron)*, 610 B.R. 670, 675 (Bankr. D.N.M. 2019) (recognizing that if the state court judgment contains "findings relevant to Plaintiff's nondischargeability claims, issue preclusion principles might bar relitigation of those facts."); *Federal Trade Comm'n v. Abeyta (In re Abeyta)*, 387 B.R. 846, 851-52 (Bankr. D.N.M. 2008) ("Summary judgment on a non-dischargeability claim may . . . be granted based on a prior judgment obtained outside of bankruptcy provided that the prior judgment establishes all elements necessary to the determination of non-dischargeability under the Bankruptcy Code.").

Because a federal court is required "to give the same preclusive effect to a state court judgment that the judgment would be given in the courts of the state in which the judgment was rendered,"[8] the Court applies the law of the state in which the prior judgment was entered to determine whether the requirements of issue preclusion have been met. *Shirley v. Lopez (In re Lopez)*, 566 B.R. 255, 260 (Bankr. D.N.M. 2017) ("Bankruptcy courts look to state law to determine whether issue preclusion bars relitigation of an issue in an adversary proceeding."); *Hauck*, 466 B.R. at 163 (applying Colorado issue preclusion law as the state where the judgment was entered).

Under New Mexico law, the party asserting issue preclusion must establish the following: 1) the parties in the first suit must be the same or in privity with the parties in the second suit; 2) the first and second suit assert different causes of action; 3) the issue or fact was actually litigated in the first suit;[9] 4) the issue was necessarily determined in the first suit in a final judgment;[10] and 5) the party against whom issue preclusion is asserted must have had a full and fair opportunity to litigate the issues.[11] The Court will examine whether each requirement is met.

---

[8] *Jiron v. City of Lakewood*, 392 F.3d 410, 415 (10th Cir. 2004) (explaining the effect of the Full Faith and Credit Act, 28 U.S.C. § 1738); *see also Sanders v. Crespin (In re Crespin)*, 551 B.R. 886, 895 (Bankr. D.N.M. 2016) ("In bankruptcy court, the general rule is that the court 'must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'") (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)).
[9] *Blea v. Sandoval*, 1988-NMCA-036, ¶ 8, 107 N.M. 554, 559, 761 P.2d 432, 437.
[10] *State ex rel. Martinez v. Kerr-McGee Corp.*, 1995-NMCA-041, ¶ 13, 120 N.M. 118, 122, 898 P.2d 1256, 1260; *Morgan v. Mladek (In re Mladek)*, No. 17-10948-t7, 2019 WL 2179715, at *4 (Bankr. D.N.M. May 17, 2019) ("'Necessarily determined' means the issue was determined as part of a final judgment.") (citing Restatement (Second) of Judgments, § 27).
[11] *See Shovelin v. Central New Mexico Elec. Co-op., Inc.*, 1993-NMSC-015, ¶ 10, 115 N.M. 293, 297, 850 P.2d 996, 1000 ("If the movant introduces sufficient evidence to meet all elements of this test, the trial court must then determine whether the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the prior litigation.") (citing *Silva*, 1987-NMSC-107 at ¶ 7, 106 N.M. at 474, 745 P.2d at 382).

*Same Parties or Privies and Different Causes of Action*

Facts not subject to genuine dispute clearly establish that the first two requirements are met: parties in the State Court Action and in this adversary proceeding are the same, and the non-dischargeability claims raised in this adversary proceeding are different than the state law claims raised in the State Court Action.

*The Issues or Facts to be Given Preclusive Effect  
Were "Actually Litigated" in the State Court Action*

The principal issue before the Court regarding whether the State Court Judgment is entitled to preclusive effect is whether issues in the State Court Action were actually litigated. Defendants contend the issues were not actually litigated because they did not appear for trial and therefore the Judgment for Damages is nothing more than a default judgment with no preclusive effect.

The Court agrees that default judgments generally do not have issue preclusive effect because the issues were not actually litigated.[12] However, the Judgment for Damages entered in State Court was not a classic default judgment where the defendant does not participate in the litigation and the Court does not conduct a trial in which the plaintiff presents testimonial and documentary evidence and proves its case.

---

[12] *Bishop v. Herwig (In re Herwig)*, 77 B.R. 662, 664 (Bankr. S.D. Ill. 1987) ("The prevailing view is that a default judgment has no collateral estoppel effect since the relevant issues were not actually litigated."); Restatement (Second) of Judgments § 27, cmt. e (1982) ("In the case of a judgment entered by . . . default, none of the issues is actually litigated. Therefore, the rule of this Section [on issue preclusion] does not apply with respect to any issue in a subsequent action."). New Mexico law follows this principle. *Blea v. Sandoval*, 1988-NMCA-036 at ¶ 14, 107 N.M. at 558, 761 P.2d at 436 ("We hold that a default judgment has no collateral estoppel effect."); *Fogelson v. Wallace*, 2017-NMCA-089, n.2, 406 P.3d 1012, 1016 ("[C]ollateral estoppel cannot apply to a default judgment . . .").

The Restatement (Second) of Judgments § 27, cmt. e (1982), explains the rationale for requiring actual litigation of an issue before giving preclusive effect to the prior judicial determination of that issue in subsequent litigation:

> A judgment is not conclusive in a subsequent action as to issues which might have been but were not litigated and determined in the prior action. There are many reasons why a party may choose not to raise an issue, or to contest an assertion, in a particular action. The action may involve so small an amount that litigation of the issue may cost more than the value of the lawsuit. Or the forum may be an inconvenient one in which to produce the necessary evidence or in which to litigate at all. The interests of conserving judicial resources, of maintaining consistency, and of avoiding oppression or harassment of the adverse party are less compelling when the issue on which preclusion is sought has not actually been litigated before. And if preclusive effect were given to issues not litigated, the result might serve to discourage compromise, to decrease the likelihood that the issues in an action would be narrowed by stipulation, and thus to intensify litigation.

In *Melnor, Inc. v. Corey (In re Corey)*, 583 F.3d 1249, 1251-52 (10th Cir. 2009), the Tenth Circuit affirmed a bankruptcy court's application of issue preclusion against a party, who in the prior litigation, participated in the proceeding, engaged in obstructive discovery tactics and falsely claimed he did not receive hearing notices, then failed to appear for the trial conducted without his presence. The Tenth Circuit was swayed by the unfairness of requiring a party to relitigate issues in a subsequent action when the default judgment entered in the earlier proceeding was the result of defendant's misconduct. "[W]hen . . . the opposing party has already been subjected in an earlier proceeding to 'oppression or harassment' that caused the court to declare a default on an issue, there is a compelling reason not to impose on that party again with respect to the same issue." *Corey*, 583 F.3d at 1252.[13] The Tenth Circuit found that

---

[13] In *In re Lamphere*, 422 Fed. App'x 741 (10th Cir. 2011), an unpublished decision that post-dates *Corey*, the Tenth Circuit refused to apply issue preclusion to a state court judgment entered by default after the defendant initially participated in the lawsuit and had notice of the trial, but stopped participating in the litigation and chose not to appear at trial. The Tenth Circuit distinguished *Corey* by noting that the federal default judgment in *Corey* "was not entered because of [debtor's] failure to contest the issue but rather because his efforts in contesting the matter were abusive." *Lamphere*, 422 Fed. App'x at 744 (quoting *Corey*, 583 F.3d at 1251). However, *Lamphere* is further distinguishable from the adversary

-10-

the rationale for the "actually litigated" requirement described in Comment e to the Restatement (Second) of Judgments did not apply in these circumstances.

In support of its decision, the Tenth Circuit quoted the following passage from F*ederal Deposit Insurance Corp. v. Daily (In re Daily)*, 47 F.3d 365, 368 (9th Cir.1995):

> The judgment entered . . . was not an ordinary default judgment. Daily did not simply decide the burden of litigation outweighed the advantages of opposing the FDIC's claims and fail to appear. He actively participated in the litigation, albeit obstructively, for two years before judgment was entered against him. A party who deliberately precludes resolution of factual issues through normal adjudicative procedures may be bound, in subsequent, related proceedings involving the same parties and issues, by a prior judicial determination reached without completion of the usual process of adjudication. In such a case the "actual litigation" requirement may be satisfied by substantial participation in an adversary contest in which the party is afforded a reasonable opportunity to defend himself on the merits but chooses not to do so.

*Corey* 583 F.3d at 1253.

Similarly, in *Garner v. Lehrer (In re Garner)*, 56 F.3d 677 (5th Cir. 1995), the Fifth Circuit affirmed a bankruptcy court's application of issue preclusion where the debtor answered the complaint but failed to appear for trial. Further, the bankruptcy court's decision was made after a trial in which the plaintiff met its burden of proof. *Id.* at 680.[14] "Simply put, when a state court, after a 'full and fair' adjudication, determines an issue, a bankruptcy court may give that determination collateral estoppel [a/k/a issue preclusive] effect." *Id.* at 681.

In the case before this Court, Defendants answered the complaint, filed a counterclaim, and participated in the State Court Action for fifteen months. It was not until trial that

---

proceeding before this Court for two reasons. First, and more importantly, nothing in *Lamphere* indicates that the state court conducted a trial on the merits and heard evidence after defendant failed to appear. Second, *Lamphere* court applied the New Jersey law of issue preclusion, not New Mexico law.

[14] *See also Herwig*, 77 B.R. at 664 (issue preclusion applied were the defendant filed an answer and counterclaim, but failed to appear for trial, and judgment was entered only after evidence was heard and considered).

-11-

Defendants disengaged themselves from the litigation and failed to appear. In resisting Plaintiff's Motion for Summary Judgment, Defendants offered no reason, justification, or excuse for why they chose not to appear at the trial in the State Court Action. Importantly, the State Court held the trial despite Defendants' failure to appear, put Plaintiff to his burden of proof as to both liability and damages, took evidence, examined the issues, and made a decision on the merits after making extensive, detailed findings of fact and conclusions of law. The Judgment for Damages recites that the State Court "heard witness testimony, saw evidence and demonstrative videos, heard argument by counsel," and issued its decision "after due consideration." Judgment for Damages, p. 1. The Transcript of the trial likewise shows that Plaintiff presented both testimony and documentary evidence at a trial lasting over two and a half hours.

The rationale for the "actually litigated" requirement is not served by requiring the prevailing party to relitigate the same issues in a subsequent action after the losing party actively participates in the prior litigation until trial, fails to show up for the trial without advance notice and with no reason, justification, or excuse for failing to appear, and the court holds a trial, puts the party to its burden of proof, and decides the issues on the merits after making detailed findings of fact and conclusions of law. Under these circumstances, the Court is satisfied that the Judgment for Damages meets the "actually litigated" requirement for issue preclusion.

*Necessarily Determined in a Final Judgment*

The fourth requirement, that the issues were necessarily determined as part of a final judgment, is met. The Judgment on Damages is a final judgment. A judgment is considered final under New Mexico law when "all issues of law and fact have been determined and the case disposed of by the trial court to the fullest extent possible." *Principal Mut. Life Ins. Co. v. Straus*, 1993-NMSC-058, ¶ 6, 116 N.M. 412, 413, 863 P.2d 447, 448 (quoting *Kelly Inn No. 102, Inc. v.*

*Kapnison*, 1992-NMSC-005, ¶ 14, 113 N.M. 231, 236, 824 P.2d 1033). The Judgment for Damages is a final judgment because it fully adjudicated Plaintiff's claims in the State Court Action. In addition, a review of the matters at issue in the State Court Action and the State Court's findings and conclusions shows that the State Court's findings and conclusions were necessary to the State Court's decision.

*Full and Fair Opportunity to Litigate the Issues*

It is also clear that the fifth requirement is met. Plaintiff has established that Defendants had a full and fair opportunity to litigate the issues in the State Court Action.

Whether a party has had a full and fair opportunity to litigate depends on equitable considerations, such as whether the party had an incentive for a vigorous defense, procedural opportunities, and inconvenience of the litigation forum. *Reeves v. Wimberly*, 1988-NMCA-038, ¶ 15, 107 N.M. 231, 235, 755 P.2d 75, 79. Defendants admit that they filed an answer and asserted a crossclaim in the State Court Action. Defendants' assertion of a crossclaim indicates they were motivated to participate in the litigation. In defending the Motion for Summary Judgment before this Court, Defendants have not argued that they did not have a full and fair opportunity to litigate the issues, nor do they raise procedural concerns about the State Court's entry of the judgments. The trial transcript from the State Court Action also supports a finding that Defendants had a full and fair opportunity to litigate. The State Court judge noted on the record that the matter "has been properly noticed for quite some time" yet "defendants Donald and Jim Alderman do not appear to be here today." *See* Doc. 11-2, p. 2. Defendants were afforded a full and fair opportunity to present their defenses and claims in the State Court Action.

### B. Plaintiff Has Established a Non-Dischargeable Claim Under § 523(a)(6)

Plaintiff asserts that the debt at issue is non-dischargeable under § 523(a)(6). Under that section, debts "for willful and malicious injury by the debtor to another entity or to the property of another entity" are non-dischargeable. § 523(a)(6). "[P]roof of a 'willful and malicious injury' under § 523(a)(6) requires proof of two distinct elements–The injury must be both 'willful' *and* 'malicious'" *First Am. Title Ins. Co. v. Smith (In re Smith)*, 618 B.R. 901, 912 (10th Cir. BAP 2020).

An injury satisfies the "willful" component when there is a "deliberate or intentional injury, not merely 'a deliberate or intentional act that leads to injury.'" *Id.* (quoting *Kawaauhau v. Geiger*, 523 U.S. 57 (1998)). Thus, where a debtor acts with the specific intent to harm the creditor or the creditor's property, or indirect evidence indicates the debtor desired to cause the injury or believed the injury was substantially certain to occur, the willful component has been satisfied. *Id. see also Mitsubishi Motors Credit of America, Inc. v. Longley (In re Longley)*, 235 B.R. 651, 657 (10th Cir. BAP 1999) ("Intent may be established by either direct or indirect evidence.") (citation omitted).

The "malicious" component requires a wrongful action taken without justification or excuse. *See Dorr, Bentley & Pecha, CPA's, P.C. v. Pasek (In re Pasek)*, 983 F.2d 1524, 1527 (10th Cir. 1993) ("'[W]illful and malicious' injury occurs when the debtor, without justification or excuse, and with full knowledge of the specific consequences of is conduct, acts notwithstanding, knowing full well that his conduct will cause particularized injury."); *Smith*, 618 B.R. at 919 (applying the Tenth Circuit's definition in *Pasek* to the "malicious" prong of § 523(a)(6)).

-14-

The State Court found that the property damage Defendants caused to the home was extensive and took an extreme amount of effort to accomplish, and that Defendants' conduct was inexplicable and done intentionally and wantonly with a goal to destroy the property. These findings support the State Court's conclusion that "Defendants' actions constituted intentional and wanton destruction of Plaintiff's property," Judgment on Damages, conclusion of law, ¶ 27, and amply demonstrate that Defendants deliberately acted with the specific intent to damage Plaintiff's property without any justification or excuse.

The State Court Judgment, therefore, established the factual predicate from which this Court concludes that that Defendants' actions in damaging Plaintiff's property were both willful and malicious within the meaning of § 523(a)(6) and the debt arising from such conduct is non-dischargeable.[15]

C. The Amount of the Non-dischargeable Debt

Finally, the Court will address the damages awarded by the State Court for which Plaintiff is entitled to a non-dischargeable summary judgment.

Plaintiff asserts that all damages the State Court awarded are non-dischargeable. The Judgment for Damages awarded Plaintiff damages as follows:

(a) Lost rent: $9,900.00
(b) Property damages: $12,924.83
(c) Travel costs: $1,150.00
(d) Legal costs: $490.[99][16]
(e) Statutory damages: $2,500.00
(f) Attorney's fees in an amount to [be] submitted by affidavit.

Judgment for Damages, decretal ¶¶ 1 – 6.

---

[15] Because the Court has determined that the debt is non-dischargeable under § 523(a)(6), the Court need not address Plaintiff's alternate non-dischargeability claim under § 523(a)(2)(A).
[16] *See* Judgment for Damages, fact finding ¶ 18.

-15-

All damages arising from Defendants' non-dischargeable conduct, including punitive damages, fees, and interest, are non-dischargeable. In *Cohen v. de la Cruz,* 523 U.S. 213 (1998), the Supreme Court held that non-dischargeable fraud damages are not limited to the value of the money obtained by fraud, but instead, *all* damages arising from the defendant's fraud, including punitive damages, fees, and interest, are non-dischargeable under § 523(a)(2)(A). *Cohen*, 523 U.S. at 218 ("Once it is established that specific money has been obtained by fraud . . . 'any debt' arising therefrom is excepted from discharge."); *see also Murphy v. Spencer (In re Spencer)*, No. 15-10595-tf7, 2016 WL 1556033, at * 3 (Bankr. D.N.M. Apr. 14, 2016) ("The Supreme Court has held that where compensatory damages awarded in a state court judgment are non-dischargeable under § 523(a)(2)(A), all ancillary damages arising from the fraud are also nondischargeable.") (citing *Cohen*, 523 U.S. 213). Consequently, under *Cohen v. de la Cruz*, a defendant's full liability traceable to the money obtained by fraud, plus associated attorney's fees and costs, falls within the discharge exception. *Cohen,* 523 U.S. at 218.

The Supreme Court's holding in *Cohen v. de la Cruz* applies equally to non-dischargeability claims under § 523(a)(6). *Glencove Holdings, LLC v. Bloom (In re Bloom)*, 622 B.R. 366, 439 (Bankr. D. Colo. 2020) ("[E]very reported decision the Court has located on the topic confirms that the *de la Cruz* approach applies to actions under § 523(a)(6).") (collecting cases); *McCallum v. Pixley (In re Pixley)*, 504 B.R. 852, 870 (Bankr. E.D. Mich. 2014) ("The holding and reasoning of *Cohen* applies to actions under § 523(a)(6).").

The Court must nevertheless be careful when applying issue preclusion to damage awards "to ensure that all damages arise solely from the prohibited § 523(a) conduct." *Spencer*, 2016 WL 1556033 at *4. Having reviewed the State Court's fact findings of fact and conclusions of

law in light of the damages awarded in the Judgment for Damages, the Court is satisfied that the damages are all traceable to Defendants' willful and malicious conduct.

The $9,900.00 damage award for lost rent represents unpaid rent for the unexpired term of Defendants' lease, less the amount Plaintiff was able to recover after re-leasing the property. *See* Judgment for Damages, conclusion of law, ¶ 25 ("Plaintiff was damaged through lost rental value under the Contract in the amount of $9,900.00 after offsets, from re-letting after repairs, are applied."). Although this amount is equal to the amount Plaintiff would recover as compensatory contract damages, Defendants breached the lease by their willful and malicious conduct that damaged Plaintiff's property. Under these circumstances, the damage award for lost rent is non-dischargeable because it is directly traceable to Defendants' non-dischargeable conduct. In other words, because Defendants breached the lease by willfully and maliciously damaging Plaintiff's property, it is appropriate to include the contract damages caused by that breach as part of the non-dischargeable debt under § 523(a)(6). *See Chavez v. Romero (In re Romero)*, 618 B.R. 526, 535 (Bankr. D.N.M. 2020) (where defendant's breach of the rental contract was based on willful and malicious damage to the house, the court determined that state court's award of damages for breach of contract was non-dischargeable).

The other enumerated damages amounts likewise are directly traceable to Defendants' willful and malicious conduct. The property damage award of $12,924.83 quantifies the costs Plaintiff incurred to repair the damage to Plaintiff's property. Plaintiff was awarded $1,150.00 for the cost of traveling to New Mexico to arrange for the property repairs necessitated by the Defendants' extensive damage to the property. Plaintiff's legal costs prosecuting the State Court Action also stem from Defendants' willful and malicious conduct in breaching the lease. The award of $2,500.00 in statutory damages is based on a violation of NMSA 1978, § 47-8-48(C)

and NMSA 1978, § 47-8-22(F). *See* Judgment for Damages, conclusion of law, ¶ 34. Pursuant to those statutes, a resident must not "deliberately or negligently destroy, deface, damage, impair, or remove any part of the premises or knowingly permit any person to do so," NMSA 1978, § 47-8-22(F), and "[a]ny resident who intentionally violates a provision of Subsection F of section 47-8-22 NMSA 1978 shall be subject to a civil penalty equal to two times the amount of the monthly rent." NMSA 1978, § 47-8-48(C). The statute provides for damages for both willful and negligent conduct. But because the fact findings establish that Defendants' damage to Plaintiff's property was both willful and malicious, the statutory damage award is appropriately included as part of the non-dischargeable debt under § 523(a)(6).

Finally, attorneys' fees resulting from litigation of a debt determined to be non-dischargeable under § 523(a)(6) likewise are non-dischargeable. *Nolan v. Smith (In re Smith)*, 321 B.R. 542 (Bankr. D. Colo. 2005) (applying *Cohen* to conclude that the attorney fee award by the state court for a debt determined non-dischargeable under § 523(a)(6) was part of the non-dischargeable debt); *Bloom*, 622 B.R. at 435 (explaining that "the debt to be excepted from discharge extends to all liability arising from [the non-dischargeable conduct], including . . . costs and attorneys' fees . . .") (citing *Cohen*, 523 U.S. at 223). The Judgment for Damages provides that Plaintiff is entitled to recover attorneys' fees in an amount to be submitted by affidavit. Judgment for Damages, decretal ¶ 6. Defendants admits that Plaintiff obtained a Judgment for Attorney Fees. *See* Undisputed Fact No. 14. However, Plaintiff did not submit a certified copy of the Judgment for Attorney Fees in support of the Motion for Summary Judgment. The Court cannot grant summary judgment to Plaintiff for the attorneys' fees awarded by the state court because Plaintiff failed to present admissible evidence of this damage amount

in support of the Motion for Summary Judgment. *See* Fed.R.Civ.P. 56(c), made applicable to this adversary proceeding by Fed.R.Bankr.P. 7056.

CONCLUSION

The Judgment for Damages is entitled to preclusive effect and establishes both the character and the amount of the non-dischargeable debt under § 523(a)(6). Plaintiff is entitled to summary judgment on the non-dischargeability claim and on all damages the State Court awarded other than attorney's fees.

WHEREFORE, IT IS HEREBY ORDERED that the Motion for Summary Judgment is granted, in part. The Court will enter a separate partial summary judgment consistent with this Memorandum Opinion and Order.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: March 8, 2021

COPY TO:

Leslie D. Maxwell
Attorney for Plaintiff
Maxwell & Gilchrist, P.C.
7007 Wyoming Blvd. NE
Ste A-1
Albuquerque, NM 87109

Gerald R Velarde
Attorney for Defendant
The Law Office of Gerald R. Velarde
PO Box 11055
Albuquerque, NM 87192